# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER W. THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:10-cv-479 |
| v | ) |
| | ) |
| KENNETH M. ROSS, TIMOTHY P. MILLER, | ) |
| MORGAN STANLEY SMITH BARNEY | ) |
| formerly doing business as CITIGROUP | ) |
| GLOBAL MARKETS, INC. and SHARI L. | ) |
| KACZMAREK | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending now before the Court is MOTION OF DEFENDANTS MORGAN STANLEY SMITH BARNEY F/D/B/A CITIGROUP GLOBAL MARKETS, INC., TIMOTHY P. MILLER AND KENNETH M. ROSS TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6), with brief in support (Doc. Nos. 8 and 9), and PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' COLLECTIVE RULE 12(b)(6) MOTION TO DISMISS (Doc. No. 11). Defendants filed a reply brief (Doc. No. 12), in which, *inter alia*, they requested oral argument. Argument on the motion to dismiss was heard on August 17, 2010. Both parties presented their positions skillfully and effectively. The motion is now ripe for disposition.

### Background

The following facts are taken from Plaintiff's Complaint.[1]

In general, the counts within Plaintiff's Complaint stem from what can be best described

---

[1] In a Fed.R.Civ.P. 12(b)(6) Motion to Dismiss, all factual allegations are viewed in the light most favorable to the non-moving party. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (citations omitted).

as the deterioration of a previous romantic relationship between Plaintiff and Defendant Kaczmarek and workplace disharmony between Plaintiff and Defendant Ross.  According to Plaintiff, "[p]rior to the Spring of 2005, [Plaintiff] Thompson and Kaczmarek were romantically involved. [Plaintiff] ended the relationship and, as a result, Kaczmarek became intent on embarrassing [Plaintiff] in revenge."  Doc. No. 1 at ¶ 11.  At some point shortly after the conclusion of the relationship, Defendant Kaczmarek allegedly informed Defendant Ross that she had Plaintiff's personal laptop computer in her possession, and that the computer contained embarrassing information about Plaintiff.  *Id.* at 12.  In the late summer/early fall of 2006, Defendant Ross and Defendant Miller each allegedly contacted Defendant Kaczmarek in order to obtain the laptop, which Kaczmarek subsequently provided to Miller "on the understanding that Miller intended to have other Citi employees access, search, and extract data from the computer's hard-drive with the desired result of obtaining embarrassing information."[2]  *Id.* at ¶ 18.

     A civil action was initiated by Plaintiff against Defendant Ross in 2007 in the Court of Common Pleas of Allegheny County at Case No. GD 07-018537.  That action involves a number of defamation per se claims against Ross for his "repeated defamatory and false assertions to [Plaintiff's] friends and co-workers.  The specific defamatory comments included that [Plaintiff] was having sex with prostitutes and homosexuals, that he was a carrier of sexually transmitted diseases as a consequence, and that he infected another person, a co-worker, with his disease ..."  Doc. No. 1 at ¶ 10.  Plaintiff believes that the laptop computer was provided to some unidentified

---

[2] According to the Complaint, Defendant Kaczmarek initially declined to provide the laptop computer to Defendant Ross, at which point Ross directed Miller to request the laptop from Kaczmarek.  In response to Miller's request, Kaczmarek agreed to provide the computer. Doc No. 1 at ¶¶ 25 - 26.

2

Citi employee, who was able to "access, search, and extract from [Plaintiff's] computer's hard-drive the data containing the e-mails." *Id.* at ¶ 32.

In the instant Complaint, Plaintiff alleges violations of the Stored Communications Act ("SCA"),18 U.S.C. § 2701 *et seq.*, against each Defendant at counts I - IV, violations of the Pennsylvania Stored Communications Act, 18 Pa.C.S. § 5741 *et seq.*, against each Defendant at counts V - VII, claims of the common law tort of invasion of his privacy by intrusion into seclusion against all Defendants at counts IX - XII, and the common law tort of civil conspiracy against all Defendants at count XIII. Plaintiff brings counts I - IV under the Court's original jurisdiction pursuant to 28 U.S.C. § 1331, and counts V - XIII under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *See* Doc. No. 1 at ¶¶ 6 - 7.

**Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In making this determination, a court must engage in a two part analysis. *Ashcroft v. Iqbal*, --- U.S. ----, ---- - ----, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009); *Fowler*, 578

F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." *Id.* A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *See id*.

## Analysis

A. <u>Counts I - III and V - VII: The Stored Communications Act and parallel state law claims</u>

As noted above, Plaintiff alleges four counts under the federal Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*, and four counts under the Stored Communications provision of the Pennsylvania Wiretapping Act, 18 Pa.C.S. §§ 5741 *et seq.*, singly directing each count against a respective Defendant. Doc. No. 1. Generally speaking, Title II to the Electronic Communications Privacy Act of 1986 ("ECPA"), also known as the Stored Wire and Electronic Communications and Transactional Records Access (the "Stored Communications Act" or "SCA"), 18 U.S.C. §§ 2701-2711, bars unauthorized access to stored electronic communications. Section 2701 includes in relevant part that whoever:

    (1)    intentionally accesses without authorization a facility through which an electronic communication service is provided; or

    (2)    intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system...."

*Id.* § 2701(a). In addition to criminal penalties, the SCA provides a civil cause of action for "any

4

provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter." *Id.* § 2707(a). Because the language of the Pennsylvania statute mirrors that of the federal Stored Communications Act, it is interpreted in the same way, and the analysis and conclusions herein apply equally to this state law claim. *See Fraser v. Nationwide Mutual Insurance Co.*, 352 F.3d 107, 114 at n. 9 (3d Cir. 2003). The Court notes that none of the parties addressed the two statutes separately.

With their motion to dismiss, Defendants Morgan Stanley Smith Barney f/d/b/a Citigroup Global Markets, Inc. ("Citi"), Kenneth M. Ross, and Timothy P. Miller challenge the notion that the facts pled within the Complaint afford Plaintiff a basis for relief under either the federal or the state Stored Communications Act. In response, Plaintiff argues that his laptop served as his conduit to the electronic communication services such as Yahoo!, America Online, and Stargate.net, the services from which he originally received the messages subsequently downloaded and saved to his laptop. Doc. No. 11. As such, his laptop was a "facility covered by the SCA" and that Defendants were little more than "electronic trespassers."[3] *Id.*

Given the relatively straight forward factual scenario, the question before the Court is whether the unauthorized access of previously received electronic mail messages ("e-mail") that had been downloaded by the recipient and saved to the hard drive of his personal laptop computer violates the Stored Communications Act.

The legal structure to Plaintiff's position is clear: 1) that e-mail messages are considered

---

[3] With this term, Plaintiff is invoking language describing the general purpose of the Stored Communications Act to "create a cause of action against computer hackers (e.g. electronic trespassers)." Doc. No. 11 (quoting *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 439447 (WD Pa. 2007)(internal quotations omitted).

5

to be electronic communications protected by the SCA; 2) that his laptop computer was his means by which he accessed his e-mail messages, and was therefore, "a facility through which an electronic communication service is provided"; 3) that the e-mail messages were downloaded and saved to the laptop hard drive for the purpose of backup protection for the message, and 4) that Defendants accessed the data without proper authority or permission, hence violating the SCA and the parallel Pennsylvania statute. *See, e.g.,* Doc. No. 1 at ¶¶ 36, 40, 44, 48, 52, and 54; *see also*, Doc. No. 11 at 5 - 7.

For their part, Defendants accept for the purpose of the motion that e-mail messages are included within the definition of an electronic communication that is protected under the SCA, and that Plaintiff did not provide them with authority to access the data saved to the laptop hard drive. *See generally,* Doc. Nos. 8 & 9. Nevertheless, Defendants argue that the conduct described within the Complaint "does not relate to the improper access of material held in electronic storage by an electronic communication service", and, therefore, the SCA does not apply. Doc. No. 9 at 2. Essentially, Defendants' motion to dismiss challenges what they characterize as the legal conclusion on the part of Plaintiff that the e-mail messages downloaded and saved to his hard drive were in "electronic storage" for the purpose of falling under the protection of the SCA.

Congress enacted the relevant provision of the Stored Communication Act to protect privacy interests in personal and proprietary information from the mounting threat of computer hackers "deliberately gaining access to, and sometimes tampering with, electronic or wire communications" by means of electronic trespass. *See* S.Rep. No. 99-541, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555 at 3557. Consistent with that overall purpose, the conduct

proscribed by § 2701 is two-fold. Initially, it makes it unlawful to access a facility through which electronic communications service is provided, and thereby further obtains, alters, or prevents authorized access of an electronic communication "while it is in electronic storage in such system." 18 U.S.C. § 2701(a). It is this second element that is controlling here. It is not enough for the electronic communication data to have been accessed in any format on any computer, in order to run afoul of the SCA, the data must have been accessed or obtained while it was within the electronic storage of the electronic communications service itself.

For the reasons that follow, the facts pled in the Complaint do not allege a violation of the SCA because the e-mail data that was allegedly accessed was not data in "electronic storage" as that term is defined within the statute. 28 U.S.C. § 2510(17)(B). The SCA defines electronic storage as either a) "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof", and b) "any storage of such communication by an electronic communications service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17); *see also* 18 U.S.C. § 2711(1) (providing that terms defined in § 2510 apply to Title II of ECPA).

As to the first part of the definition, Plaintiff does not allege that the e-mail messages were in temporary or intermediate storage incidental to the transmission thereof. To the contrary, the Complaint alleges that the data was accessed while it was stored on the hard drive, as opposed to during the course of, or incidental to, transmission. *See, e.g.,* Doc. No. 1 at ¶ 31; *see also*, Doc. No. 11 at 7 ("In this case, the e-mails were in backup storage on Thompson's hard drive.") Accordingly, the first part of the definition of "electronic storage" is inapplicable to the facts alleged in the Complaint. Considering the second part of the definition of electronic

7

storage, the plain language of subsection (B) extends SCA protection to e-mails received by the intended recipient in those instances where they remain stored by an electronic communication service.[4] The Court notes that the language of this portion of the definition includes two prepositional phrases, namely "of such communication" and "by an electronic communication service." The interpretive maxim *noscitur a sociis* suggests "different clauses of the same sentence" should be presumed "to embrace the subject matter of the sentence." *See Graham County Soil and Water Conservation District v. U.S. ex rel. Wilson*, - U.S. -, 130 S.Ct. 1396, 1406 (Mar. 30, 2010). It stands to reason, naturally, that in order to fit within the second part of the definition of protected electronic storage, the electronic communication in question must have been stored by the electronic communication service itself, as opposed to the user of the service.

Turning to the facts as alleged in the Complaint, the information which Plaintiff claims was illegally accessed by Defendants was retrieved from storage within the hard drive of the laptop and not from the electronic communication service provider's own storage. Clearly Plaintiff has not alleged that the Defendants accessed e-mail communications directly from any kind of storage operated and maintained by the internet service providers ("ISPs"), more specifically America Online, Yahoo!, and Stargate.net, with which Plaintiff had e-mail accounts and received e-mail services. Such a scenario, one in which e-mail was accessed directly from the ISP server by a defendant after it was originally received and read by a plaintiff, was

---

[4] While the phrase "such communication" in § 2510(17)(B) refers to "wire or electronic communications" as mentioned in (17)(A) - it does not also include the requirement that the electronic communications be "incidental to the electronic transmission thereof." If that were the case, there would be no need to write them as two separate meanings.

addressed by a U.S. District Court in the eastern district of Michigan, *see Bailey v. Bailey*, Civ.A.No. 07-11672, 2008 WL 324156 (E.D.Mich. 2008), a decision that provides guidance here. In *Bailey*, the court noted that the plain language of the SCA includes "e-mails received by the intended recipient e-mail traffic received by the intended recipient where they remain stored by an electronic communication service." *Bailey*, 2008 WL 324156 at *6. In so doing, the *Bailey* court incorporated reasoning from the Court of Appeals for the Ninth Circuit regarding use of the term "backup protection" within the definition of "electronic storage":

> There is no dispute that messages remaining on NetGate's server after delivery are stored 'by an electronic communication service' within the meaning of 18 U.S.C. § 2510(17)(B). The only issue, then, is whether the messages are stored 'for purposes of backup protection.' 18 U.S.C. § 2510(17)(B). We think that, within the ordinary meaning of those terms, they are.
>
> An obvious purpose for storing a message on an ISP's server after delivery is to provide a second copy of the message in the event that the user needs to download it again - if, for example, the message is accidentally erased from the user's own computer. <u>The ISP copy of the message functions as a 'backup' for the user</u>. Notably, nothing in the Act requires that the backup protection be for the benefit of the ISP rather than the user. Storage under these circumstances thus literally falls within the statutory definition.

*Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2003)(emphasis added). In other words, e-mail messages stored by an electronic communication service (in *Theofel* it was an ISP called NetGate) for backup purposes, is included in the SCA's definition of electronic storage. The district court in *Bailey* went on to note, "<u>[h]owever, as a point of clarification, Stored Communications Act protection does not extend to emails and messages stored only on Plaintiff's personal computer</u>." *Id.* at * 6 (emphasis added); *see also, In re Doubleclick, Inc.*, 154

F.Supp.2d 497, 511 (S.D.N.Y. 2001)[5]("cookies" resident on plaintiffs' computers do not fall into § 2510(17)(B) because plaintiffs are not "electronic communication service" providers.) This Court agrees that e-mail messages downloaded and stored on, and subsequently accessed solely from, a user's personal computer does not fit within the SCA's definition of electronic storage. To hold otherwise would require this Court to simply ignore the statutory language that qualifies "storage of such communication" with the conjunctive condition "by an electronic communication service", which the Court will not do.

Plaintiff argues that his laptop computer should be considered a protected "facility" under the terms of the statute, and that, as a result, accessing the facility (laptop) to retrieve an electronic communication without his permission violates the SCA. In support, Plaintiff cites the decisions in *Fraser*, *infra.*, and *Markert v. Becker Technical Staffing, Inc.*, 2010 U.S.Dist. LEXIS 44828, * 18-19 (ED Pa. 2010), for the proposition that the SCA applies to downloaded e-mail communications that are accessed after having been received and saved by the recipient. While the Court recognizes a degree of logic which underpins this argument, it finds that Plaintiff is conflating the concept of "backup storage" to extend the protection of the SCA. In *Fraser*, an insurance company provided an e-mail account to plaintiff employee, and conducted a search of plaintiff's e-mail on its own main file server when it suspected plaintiff of disloyal behavior. In the course of that search, Nationwide apparently accessed e-mail data that had previously been

---

[5] *In re Doubleclick* was a civil class action claim alleging, *inter alia*, that an internet company violated the SCA when it accessed "cookies" that had been downloaded from the internet and stored on the hard drives of the personal computers of individual users. *In re Doubleclick*, 154 F.Supp.2d 497. In this context, "cookies" is a term defined as "computer programs commonly used by Web sites to store useful information such as usernames, passwords, and preferences, making it easier for users to access Web pages in an efficient manner." *Id.* at 154 F.Supp. 2d at 502-503.

received and read by plaintiff, had not been deleted by plaintiff after receipt or downloaded or saved elsewhere, and remained stored on the Nationwide server. The district court in that case granted summary judgment in favor of Nationwide, holding that the SCA did not apply to the e-mail data in question, reasoning that the transmissions were neither in "temporary, intermediate storage" nor in "backup protection." The district court held that "retrieval of a message from post-transmission storage is not covered by the Stored Communications Act. The Act provides protection only for messages while they are in the course of transmission. The facts of *Fraser* are that Nationwide retrieved Fraser's e-mail from storage after the e-mail had already been sent and received by the recipient. Nationwide acquired Fraser's e-mail from post-transmission storage." *Fraser v. Nationwide Mutual Insurance Co.*, 135 F.Supp.2d 623, 636 (ED Pa. 2001). The Court of Appeals for the Third Circuit held:

> We agree that Fraser's e-mail was not in temporary, intermediate storage. But to us it seems questionable that the transmissions were not in backup storage - a term that neither the statute nor the legislative history defines. Therefore, while we affirm the District Court, we do so through a different analytical path, assuming without deciding that the e-mail in question was in backup storage.

*Fraser*, 352 F.3d at 114. With respect to the meaning of the phrase "backup protection", *Fraser* is not inconsistent with the Ninth Circuit's reasoning in *Theofel,* although it did not go so far as to affirmatively hold that the e-mail in question was in backup storage. However, *Fraser* does nothing to change the statutory requirement that the electronic communication must be in storage held by an electronic communication service provider. By the same token, characterizing his laptop as a "facility" likewise does not render the Plaintiff or his laptop computer "an electronic communications service" for the purpose of satisfying the SCA definition of electronic storage.

In sum, Plaintiff's claims under the Stored Communications Act and the parallel

11

Pennsylvania statute fail to state a claim upon which relief can be granted, and Defendants' motion to dismiss as to these counts will be granted.

B.  Death of Defendant Kaczmarek

Within their brief in support of the motion to dismiss, Defendants Citi, Miller, and Ross, attached the obituary for Defendant Kaczmarek, who apparently died on April 18, 2010. Doc. No. 9 at attachment A. The Court notes that while no party has filed a separate Suggestion of Death regarding this development, such as that found within the Federal Rules of Civil Procedure at Form 9, the attachment filed with the brief in support of the moving Defendant's motion accomplished the same. That brief was served on Plaintiff on June 14, 2010. Since the initiation of the action, the docket reflects that Plaintiff has failed to effectuate service upon Defendant Kaczmarek, which is not altogether surprising in light of the close proximity in time between the reported date of death and the dates upon which the other Defendants were served. In light of that lack of service, coupled with no party having moved for the substitution of the estate of Defendant Kaczmarek within 90 days of the service of the declaration of her death, Defendant Kaczmarek will be dismissed from this action pursuant to Fed.R.Civ.P. 25(a).

C.  Counts XI and XIII: Common law tort claims against Defendant Citi

In Count XI, Plaintiff alleges the common law tort of invasion of his privacy by way of an unreasonable intrusion into his seclusion against Defendant Citi. Doc. No. 1 at ¶¶ 90 - 93. Pennsylvania law recognizes four torts under the umbrella of invasion of privacy: "[1] unreasonable intrusion upon the seclusion of another; [2] appropriation of another's name or likeness; [3] unreasonable publicity given to another's private life; and [4] publicity that unreasonably places the other in a false light before the public." *See Burger v. Blair Med.*

*Assocs., Inc.*, 600 Pa. 194, 964 A.2d 374, 376-77 (2009) (*citing* Restatement (Second) of Torts §§ 652B-E (1977)). To state a claim for intrusion upon seclusion, a plaintiff must allege conduct which demonstrates "an intentional intrusion upon the seclusion of their private concerns which was substantial and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a person of ordinary sensibilities." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 809 A.2d 243, 247 (2002) (citations omitted). The extent to which Plaintiff alleges conduct on the part of Defendant Citi is limited to "providing the necessary program through which Miller and Ross accessed Thompson's private and personal e-mail." Doc. No. 1 at ¶ 92. Even accepting this conduct as true, the conduct alone does not suggest the requisite intent on the part of Defendant Citi to invade Plaintiff's privacy. The fact that an asset owned by Defendant Citi was allegedly used by other Defendants to, as Plaintiff alleges, unreasonably intrude upon his seclusion, does not itself implicate Defendant Citi in the same intentional conduct. For that reason, Defendant Citi's motion to dismiss Count XI will be granted.

In Count XIII, Defendant alleges the common law tort of civil conspiracy against all Defendants, including Defendant Citi. Defendants move to dismiss this count on the basis that Plaintiff has failed to sufficiently allege specific factual matter to state a claim for relief that is plausible on its face. See Doc. No. 89 at pp. 16 - 18. In response, Plaintiff argues that the facts, as pled, sufficiently allege a conspiracy among the Defendants.

The Court considers the question of whether Plaintiff has sufficiently pled a civil conspiracy with respect to Defendant Citi. To state a claim for civil conspiracy, (1) the persons must combine with a common purpose to do an unlawful act or to do a lawful act by unlawful

means or unlawful purpose, (2) an overt act in furtherance of the common purpose has occurred, and (3) the plaintiff has incurred actual legal damage. *Weaver v. Franklin County*, 918 A.2d 194, 202 (Pa. Cmwlth. Ct., 2007) (citing *Brown v. Blaine*, 833 A.2d 1166, 1173 n.16 (Pa. Cmwlth. Ct. 2003)). A party that asserts a claim of civil conspiracy is required to aver "material facts which will either directly or inferentially establish elements of conspiracy." *Id.*

Plaintiff's claim as alleged against Defendant Citi fails because Plaintiff has not averred sufficient material facts that establish Citi's participation within the required elements of a conspiracy. Viewing the allegations in the complaint in the light most favorable to the Plaintiff, he has sufficiently alleged certain overt acts, such as the various interactions between and among Defendants Kaczmarek, Miller, and Ross, that could have been done in furtherance of an unlawful act, such as conspiring against Plaintiff. He has failed, however, to allege facts that demonstrate that Defendant Citi acted in concert or agreement with any of the other Defendants.

Courts in Pennsylvania require that plaintiffs who allege civil conspiracy must plead some fact, "such as meetings, conferences, telephone calls or joint signatures" on relevant forms, or "allege facts inferring conspiratorial conduct." *Petula v. Mellody*, 588 A.2d 103, 107 (Pa. Cmwlth. Ct. 1991). In *Petula*, the court held that the plaintiff had failed to state a civil conspiracy claim where, although he alleged parallel conduct between defendants, he did not allege any facts from which one could infer conspiratorial conduct. *Id.*; *see also, Landau v. Western Pennsylvania Nat. Bank*, 282 A.2d 335, 339 (Pa. 1971).

As noted herein, Plaintiff has alleged interpersonal dysfunction between himself and Defendant Ross, as well as between himself and Defendant Kaczmarek, both relationships which, he alleges, inspired a motivation by the individual Defendants to embarrass and humiliate

14

him. To that end, Plaintiff alleges that Defendants Miller and Ross worked together to obtain the laptop computer from Kaczmarek. Devoid in the factual scenario pled, however, is any allegation of fact from which one could infer conspiratorial conduct on the part of Defendant Citi. Averring "upon information and belief" that some unidentified individual utilized what Plaintiff believes to be software or other computer resource owned by Defendant Citi in order to access the stored data from his laptop is little more than a threadbare conspiracy cause of action with no factual corroboration that would suffice to state a claim. *See* Doc. No. 1 at ¶¶ 31 - 32. For this reason, Defendant Citi's motion to dismiss Count XIII will be granted, and, accordingly, Defendant Citi will be dismissed from this civil action as no claims remain as to it.

D.    Remaining Counts: Common law tort claims against remaining Defendants

The claims remaining against the individual Defendants allege the common law tort of invasion of privacy by intrusion upon seclusion at Counts IX - XII, and a common law civil conspiracy at Count XIII. The decision whether to exercise supplemental jurisdiction over state law claims is committed to the discretion of district courts. 28 U.S.C. § 1367. A court may decline such jurisdiction if it dismisses all claims over which it possessed original jurisdiction. 28 U.S.C. § 1367(c)(3). In fact, in the Third Circuit, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995).

Given the fact that the claims over which this Court has original jurisdiction will be dismissed, the Court will decline to exercise supplemental jurisdiction over the remaining

pendent state claims against the individual Defendants. To that end, the Court finds that considerations of judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for doing so. On the contrary, such considerations negate the justification for exercising jurisdiction, as any continued consideration by this Court of the claims alleging a civil conspiracy between Defendants Miller and Ross to embarrass and humiliate Plaintiff, as well as the claims of the invasion of privacy by intrusion into seclusion discovered by Plaintiff in the course of his continuing defamation action in state court, contravenes the concepts of judicial economy, convenience, and fairness to the parties. For this reason, the remaining counts will be dismissed without prejudice.

    An appropriate order follows.

                                              McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER W. THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:10-cv-479 |
| v | ) |
| | ) |
| KENNETH M. ROSS, TIMOTHY P. MILLER, | ) |
| MORGAN STANLEY SMITH BARNEY | ) |
| formerly doing business as CITIGROUP | ) |
| GLOBAL MARKETS, INC. and SHARI L. | ) |
| KACZMAREK | ) |
| | ) |
| Defendants. | ) |

## ORDER OF COURT

AND NOW, this 30th day of September, 2010, in accordance with the foregoing Memorandum Opinion it is hereby ORDERED, ADJUDGED and DECREED that the Motion to Dismiss Plaintiff's Complaint filed by Defendants Morgan Stanley Smith Barney f/d/b/a Citigroup Global Markets, Inc., Kenneth M. Ross, and Timothy P. Miller is:

a. **GRANTED** with respect to counts I - VIII, XI and XII;

b. **GRANTED** as to count XIII with respect to Defendant Morgan Stanley Smith Barney f/d/b/a Citigroup Global Markets, Inc.;

c. **GRANTED** as to count XIII with respect to Defendant Kaczmarek; and

d. **GRANTED without prejudice** with respect to all other counts.

The Clerk shall docket this case closed.

BY THE COURT

s/ Terrence F. McVerry
United States District Court Judge

cc: Brian J. Sommer, Esquire
Email: bjs@muslaw.com

Matthew A. Lipman, Esquire
Email: mlipman@mdmc-law.com
Heather S. Heidelbaugh, Esquire
Email: hheidelbaugh@bccz.com
Kevin B. Walker, Esquire
Email: KWALKER@MDMC-LAW.COM